IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Phil Hollingsworth, *on his behalf and on behalf of all others similarly situated,* | Civil Action No.: _____ |
| Plaintiff, | |
| v. | |
| Jackson Hewitt Inc.; American Express Company; Restaurant.com, Inc., | **COMPLAINT** |
| Defendants. | |

For his Class Action Complaint, Plaintiff, Phil Hollingsworth, by and through his undersigned counsel, pleading on his own behalf and on behalf of all others similarly situated, states as follows:

**INTRODUCTION**

1. Plaintiff, Phil Hollingsworth ("Plaintiff"), brings this class action for damages resulting from the illegal actions of Jackson Hewitt Inc. ("Jackson Hewitt"), American Express Company ("American Express") and Restaurant.com, Inc. ("Restaurant.com," and together with Jackson Hewitt and American Express, "Defendants"). Defendants sent unauthorized text messages to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA").

2. Wireless spam is a growing problem in the United States. In April 2012, the Pew Research Center found that 69% of texters reported receiving unwanted spam text messages, while 25% reported receiving spam texts weekly. http://www.pewinternet.org/fact-sheets/mobile-technology-fact-sheet/ (last visited February 9, 2016); *see also* Nicole Perlroth, Spam Invades a Last Refuge, the Cellphone, N.Y.Times, April 8, 2012, at A1 ("In the United

1

States, consumers received roughly 4.5 billion spam texts [in 2011], more than double the 2.2 billion received in 2009 . . . .").

        3.      Jackson Hewitt is one of the nation's largest providers of tax-preparation services.

        4.      American Express is one of the nation's largest credit card companies.

        5.      Restaurant.com is an internet-based restaurant marketing and promotional company.

        6.      Ina combinedeffort to market and advertise their respective products and services, Defendants jointly sent automated text messages to consumers marketing Jackson Hewitt's tax-preparation services in conjunction with the American Express Serve® card and coupons and membership at Restaurant.com. As part of this text messaging campaign, Defendants sent Plaintiff and other consumers automated telemarketing text messages without obtaining clear and conspicuous prior express written consent as required by the TCPA.

        7.      Defendants devised, created and approved this joint text messaging campaign.

        8.      Defendants did not provide consumers clear and conspicuous disclosure of the consequence of providing Jackson Hewitt their phone number, *i.e.* that the consumer agrees unambiguously to receive automated texts messages from or on behalf of Defendants.

        9.      Moreover, Defendants wholly disregard consumers' requests for Defendants' text messages to stop. Indeed, Defendants continues to send consumers their text messages even after consumers text "STOP" as instructed in Defendants' text messages.

        10.      The telemarketing messages were sent to consumers' cell phones by or on behalf of Defendants using a fully automated system. The messages were unauthorized and not sent for emergency purposes. Accordingly, Defendants' messages violated the TCPA.

**JURISDICTION AND VENUE**

11. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S. Ct. 740, 751-53 (2012).

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Plaintiff resides in this District and a substantial part of the events giving rise to the claim occurred in this District.

**PARTIES**

13. Plaintiff is, and at all times mentioned herein was, an adult individual residing in Marengo, Illinois, and is a "person" as defined by 47 U.S.C. § 153(39).

14. Jackson Hewitt is a New Jersey business entity with an address of 3 Sylvan Way, Parsippany, New Jersey, and is a "person" as defined by 47 U.S.C. § 153(39).

15. American Express is a New York business entity with an address of 200 Vesey Street, New York, New York, and is a "person" as defined by 47 U.S.C. § 153(39).

16. Restaurant.com is a Delaware business entity with an address of 160 Greentree Drive, Suite 101, Dover, Delaware, and is a "person" as defined by 47 U.S.C. § 153(39).

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**

17. The TCPA regulates, among other things, the use of automated telephone dialing systems ("ATDS").

18. Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

19. 47 U.S.C. § 227(a)(1) defines an ATDS as equipment having the capacity–

(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

 (B) to dial such numbers.

 20. "Prior express written consent" is required before making automated telemarketing calls, meaning there must be a written agreement, signed by the person receiving the call or text, with a "clear and conspicuous disclosure" that specifically authorizes the seller to send telemarketing communications using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200.

 21. The FCC has clarified that text messages qualify as "calls" under the TCPA:

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the party is charged." This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003); *see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009).

## ALLEGATIONS APPLICABLE TO ALL COUNTS

22. On February 10, 2016, Defendants began sending text messages to Plaintiff's cellular telephone number, 262-XXX-4538. True and correct copies of the text messages received by Plaintiff from Defendants are produced below[1]:



23. Defendants' text messages to Plaintiff advertised a promotion wherein Plaintiff could allegedly receive a coupon to certain restaurants issued by Restaurants.com if he retained

---

[1] The images below reflect three text messages. The message sent on February 17, 2016 is duplicated in these two screenshots.

Jackson Hewitt to file his income tax return and agreed to accept any income tax return he was entitled to on an American Express "Serve®" credit card.

24. Defendants' text messages stated that Plaintiff could "Reply STOP [to] OPT Out" of the messages. Plaintiff responded "Stop," yet Defendants proceeded to send Plaintiff a subsequent unwanted text messaged despite knowing that they did not have Plaintiff's consent to do so.

25. Plaintiff never provided Defendants with his cell phone number or his prior express consent to call his cell phone numbers with automated text messages.

26. The text messages sent to Plaintiff's cellular phone by Defendants advertised the availability of Defendants' products and services and thus constitute 'telemarketing.'

27. The text messages received by Plaintiff were fully automated. The content of the messages received by Plaintiff was not individualized to Plaintiff in any way. The exact same text messages were automatically sent to thousands of consumers as a part of the pre-planned telemarketing campaign.

28. The text messages sent to Plaintiff's cellular phone were made with an ATDS as defined by 47 U.S.C. § 227(a)(1). The ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

29. The telephone number messaged by Defendants was assigned to a cellular telephone service for which Plaintiff incurs charges for incoming messages pursuant to 47 U.S.C. § 227(b)(1).

30. The messages from Defendants to Plaintiff were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

6

## CLASS ACTION ALLEGATIONS

### A. The Class

31. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all others similarly situated.

32. Plaintiff represents, and is a member of the following classes:

**Class 1:All persons within the United States who did not provide Defendants clear and conspicuous prior express written consent to send automated telemarketing text messages and who received one or more automated telemarketing text messages, from or on behalf of Defendants, to said person's cellular telephone, made through the use of any automatic telephone dialing system within four years prior to the filing of the Complaint**

**Class 2: All persons within the United States who, after notifying Defendants that it no longer wished to receive automated telemarketing text messages received one or more text messages, from or on behalf of Defendants, to said person's cellular telephone, made through the use of any automatic telephone dialing system within four year prior to the filing of the Complaint.**

33. Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the class members number in the tens of thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

### B. Numerosity

34. Upon information and belief, Defendants sent automated telemarketing text messages to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express written consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

35. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' records.

## C. Common Questions of Law and Fact

36. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. These questions include:

   a. Whether Defendants sent non-emergency text messages to Plaintiff and Class members' cellular telephones using an ATDS;

   b. Whether Defendants can meet their burden of showing they obtained prior express written consent to send each message;

   c. Whether Defendants' conduct was knowing and/or willful;

   d. Whether Defendants are liable for damages, and the amount of such damages; and

   e. Whether Defendants should be enjoined from such conduct in the future.

37. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely send automated text messages to telephone numbers assigned to cellular telephone services without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## D. Typicality

38. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## E. Protecting the Interests of the Class Members

39. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

**F. Proceeding via Class Action is Superior and Advisable**

40. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecutions of separate claims against Defendants is small because it is not economically feasible for Class members to bring individual actions.

41. Management of this class action is unlikely to present any difficulties. Several courts have certified classes in TCPA actions. These cases include, but are not limited to: *Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

## COUNT I
## Violations of the TelephoneConsumer Protection Act,
## 47 U.S.C. § 227, *et seq.*

42. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

43. Defendants sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Classeswithout their prior express written consent.

44. Each of the aforementioned messages by Defendants constitute a violation of the TCPA.

45. Plaintiff and the Classes are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

46. Additionally, Plaintiff and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendants in the future.

47. Plaintiff and the Classes are also entitled to and do seek a declaration that:

   a. Defendants violated the TCPA;

   b. Defendants placed telemarketing text messages; and

   c. Defendants placed text messages to the Plaintiff and the Classes without prior express written consent.

**COUNT II**
**Knowing and/or Willful Violations of the**
**Telephone Consumer Protection Act,**
**47 U.S.C. § 227,** *et seq.*

48. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

49. Defendants knowingly and/or willfully sent multiple automated text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Classeswithout their prior express consent.

50. Each of the aforementioned messages by Defendants constitute a knowing and/or willful violation of the TCPA.

51. As a result of Defendants' knowing and/or willful violations of the TCPA, Plaintiff and the Classes are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

52. Additionally, Plaintiff and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendants in the future.

53. Plaintiff and the Classes are also entitled to and do seek a declaration that:

   a. Defendants knowingly and/or willfully violated the TCPA;

   b. Defendants knowingly and/or willfully placed telemarketing text messages to Plaintiff and the Classes;

c. Defendants knowingly and/or willfully obtained the telephone numbers of non-customers;

d. Defendants willfully placed telemarketing text messages to non-customers such as Plaintiff and the Classes, knowing they did not have prior express written consent to do so; and

e. It is Defendants' practice and history to place telemarketing text messages to non-customers without their prior express consent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Classes the following relief against Defendant as follows:

1. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future;
2. Declaratory relief as requested;
3. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);
4. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);
5. An award of attorneys' fees and costs to counsel for Plaintiff; and
6. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: March 11, 2016

                Respectfully submitted,

                By /s/ Sergei Lemberg
                Sergei Lemberg, Esq.
                LEMBERG LAW, L.L.C.
                43 Danbury Road, 3rd Floor
                Wilton, CT 06897
                Telephone: (203) 653-2250
                Facsimile: (203) 653-3424
                Attorneys for Plaintiff