IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Phil Hollingsworth, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16 C 50059 |
| | ) | |
| vs. | ) | |
| | ) | |
| Jackson Hewitt Inc., et al., | ) | Judge Philip G. Reinhard |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated below, defendants motion [29] to compel arbitration of, and stay proceedings on, Hollingsworth's claims is granted. This stays Count I. It does not appear from the first amended complaint that Hollingsworth is making any claims under Count II. To the extent he is making any claim under Count II, his claims therein are also stayed.

## STATEMENT-OPINION

Plaintiffs, Phil Hollingsworth and Steve Yankee, on their own behalf and on behalf of all others similarly situated, bring this putative class action against defendants, Jackson Hewitt Inc. ("Jackson Hewitt"), American Express Co. ("AmEx"), and Restaurant.com, Inc. ("Restaurant"). Count I of the first amended complaint [45] alleges claims by Hollingsworth (and those similarly situated) against all defendants. Count II alleges claims by Yankee (and those similarly situated) against only Jackson Hewitt. Both counts allege violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"). Defendants move [29] to compel arbitration and stay proceedings as to Hollingsworth's claims. Yankee's claims are not subject to the motion.

Hollingsworth entered into a tax preparation contract with Jackson Hewitt on February 23, 2015. Hollingsworth requested an "Assisted Refund" ("AR"). The AR program was provided through Republic Bank & Trust Co. ("Bank"). Hollingsworth executed an assisted refund agreement ("Agreement") with the Bank, also on February 23, 2015. The Agreement contains an arbitration provision. The arbitration provision includes the following: "The words 'dispute' and 'disputes' are given the broadest possible meaning and include, without limitation (i) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this arbitration provision, the validity and scope of this arbitration provision; (ii) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Agreement (including this arbitration provision and the fees charged), or any prior agreement or agreements between me and the BANK; (iii) all claims disputes or controversies asserted individually or collectively against any of (a) the BANK (b) Servicer, (c)

1

any of the Jackson Hewitt System and/or (d) any of the BANK's, Servicer's, the Jackson Hewitt System's former, present and future parent, subsidiary and affiliated corporations . . . and their former, present and future . . . agents . . . (collectively, 'Related Third Parties') including claims for money damages and/or equitable or injunctive relief; . . . (vi) all claims based upon a violation of any state or federal constitution, statute, or regulation; (vii) all claims asserted by me against the BANK of (sic) any of the Related Third Parties . . .; (viii) all claims asserted by me as a private attorney general, as a representative and/or member of a class of persons, or in any other representative capacity."

The Federal Arbitration Act ("FAA") provides that a written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid . . . save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a suit is brought in a federal court "upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such a suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Once it is clear "that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." Gore v. Alltel Communications, LLC, 666 F.3d 1027, 1032 (7th Cir. 2012). A "court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Id. (internal quotation marks and citations omitted).

The arbitration provision, set out above, states that it applies to "all claims, disputes, or controversies arising from or relating directly or indirectly to . . . the validity and scope of this arbitration provision." Thus, it delegates to the arbitrator the determination of what matters are arbitrable. "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 68-69 (2010). Because arbitration is a matter of contract, "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Id., at 69-70.

There is no dispute that the Agreement calls for arbitration. Hollingsworth agrees he would have to arbitrate any claims against the Bank. His position is that he did not agree to arbitrate claims against any of the defendants. He only agreed to arbitrate claims against the Bank and only those claims arising from or related to the Agreement. Since he has not sued the Bank, he maintains the action is not subject to arbitration.

Under Kentucky law, which Hollingsworth agrees applies, "[c]ontracts that are executed together and concern the same subject matter should be read and construed together for the purpose of ascertaining the parties' intent." Francis v. Armstrong Coal Reserves, Inc., No. 4:11-CV-00077-M, 2012 WL 5949466, *4 (W.D. Ky. Nov. 28, 2012). The tax preparation contract and the Agreement were executed together as part of the transaction in which Jackson Hewitt prepared Hollingsworth's tax return, determined he was due a refund, and arranged for him to receive an assisted refund through the Bank. The Agreement was executed as a part of this

2

process. Hollingsworth did not, upon discovering he was entitled to a refund, independently go out and look for someone to provide an assisted refund for him, discover the Bank could provide this service, and then enter the Agreement with the Bank. The Agreement was offered to him and accepted by him, as part of the tax preparation services provided by Jackson Hewitt. As noted above, the terms of the arbitration provision of the Agreement require "all claims, disputes, or controversies asserted individually or collectively against . . . any of the Jackson Hewitt System" to be arbitrated. The court cannot say "with positive assurance", Gore, 666 F.3d at 1032, that the arbitration provision does not reach Hollingsworth's claims against Jackson Hewitt. Whether the scope of the arbitration agreement reaches these claims is for the arbitrator to decide. Kentucky law does not foreclose the possibility.

     Hollingsworth maintains Smith v. Steinkamp, 318 F.3d 775 (7th Cir. 2003) compels a different result. In Steinkamp, the court held that an arbitration agreement signed by Smith on July 12, 2000 in conjunction with a payday loan agreement did not apply to claims Smith alleged arising from a later payday loan agreement she signed on August 15, 2000, where the August 15th payday loan agreement did not include an arbitration provision. Smith's suit alleged RICO violations, a violation of the Fair Debt Collection Practices Act, and a violation of state usury law arising under the August 15th payday loan agreement. The court in Steinkamp, held these claims were not subject to the arbitration provisions in the prior agreement. In a subsequent case, Andermann v. Sprint Spectrum L.P., 785 F.3d 1157, 1159 (7th Cir. 2015), involving a TCPA claim, the Seventh Circuit Court of Appeals reiterated what it had said in Steinkamp: "What we said . . . is that 'absurd results' would ensue if the arising-from and relating-to provisions contained in a payday loan agreement, defining what disputes would have to be arbitrated rather than litigated, were cut free from the loan and applied to a subsequent payday loan agreement that did not contain those provisions." The court went on to say: "That is not this case. The Andermanns' contract, containing the arising-out-of or relating-to provisions, is a single contract." Id.

     The Andermanns had entered a contract with U.S. Cellular for mobile phone service which included an arbitration clause requiring "any controversy or claim arising out of or relating to" the cellular phone contract to be resolved by binding arbitration. U.S. Cellular sold the contract to Sprint. Because of network incompatibility Sprint sent the Andermanns a letter telling them they would have to get new cellphones or switch providers. The Andermanns switched providers. Sprint subsequently placed six calls to the Andermanns to remind them that their service was about to expire and telling them Sprint had a great set of offers and devices to meet their needs. The Andermanns sued claiming the unsolicited advertisements contained in the calls violated the TCPA. Id., at 1158. Despite the fact the Andermanns had terminated service with Sprint before the calls were made, the court held the arbitration provisions of the terminated contract applied to the TCPA claims because the calls arose under the terminated contract containing the arbitration clause.

     Here, the Steinkamp, issue – attempting to apply the arbitration provision of a prior agreement to a subsequent agreement which did not contain an arbitration provision – is not present. As noted above, while the court is not telling the arbitrator how to apply Kentucky law to the facts of this case, Kentucky law does not foreclose a conclusion that the Agreement and the tax preparation contract should be read together.

Hollingsworth also argues that AmEx and Restaurant cannot compel arbitration of the claims against them as Hollingsworth had no agreement with them at all much less one compelling arbitration. He contends that while Jackson Hewitt is at least named in the arbitration provision, AmEx and Restaurant are not and, therefore, lack standing to enforce the arbitration provision.

Again, it falls to the arbitrator to determine the scope of the arbitration provision. Hollingsworth's complaint alleges the defendants engaged in "a combined effort to market and advertise their respective products and services. Defendants jointly sent automated text messages to consumers marketing Jackson Hewitt's tax preparation services in conjunction with the American Express Serve® card and coupons and membership at Restaurant.com."

Hollingsworth acknowledges that "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009). State law determines whether a nonparty may enforce an arbitration agreement against a party. Id. Kentucky allows a non-signatory to enforce an arbitration agreement against a signatory under a theory of equitable estoppel "when the signatory alleges substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Household Finance Corp. II v. King, No. 2009-CA-001472-MR, 2010 WL 3928070, *4 (Ky. App. October 8, 2010). The court cannot say "with positive assurance", Gore, 666 F.3d at 1032, that the arbitration provision does not reach Hollingsworth's claims under this equitable estoppel principle. The arbitrator must answer this question.[1]

For the foregoing reasons, defendants motion [29] to compel arbitration of, and stay proceedings on, Hollingsworth's claims is granted. This stays Count I. It does not appear from the first amended complaint that Hollingsworth is making any claims under Count II. To the extent he is making any claim under Count II, his claims therein are also stayed.

Date: 11/16/2016                                    ENTER:

*Philip G. Reinhard*

United States District Court Judge

Electronic Notices. (LC)

---

[1] The court does not mean to suggest this is the only basis for the arbitrator to consider in deciding whether AmEx and Restaurant can enforce the arbitration provision.

4